Petition for a rehearing, by
W. T. Barry.
The counsel for the appellant does not intend to disturb the collateral points not affecting the merits; but cannot persuade himself to abandon the cause of his client, without making another effort on *183 the merits of the controversy. These the court say, resolve themselves purely into matters of fact, and they were correctly decided by the court below.—With deference to the opinion of the court, the undersigned conceives that principles of law, important in their nature, are deeply involved in the main question, which principles have been passed over in silence by the court. These principles are the following:
1st. The doctrine of presumptions, or lapse of time, in favor of both complainant and defendant.
2nd. The effect of a verdict and judgment at law between the same parties to the controversy.
3rd. The doctrines of specific performance.
It will be recollected by the court, that the counsel for the appellants, before the hearing of the cause, stated that the record of ejectment for the same estate between the same parties, had been made, part of the answer of the appellant in this cause, but was not copied into it, as it ougnt to have been, and that the same common-law record was in court, and a certiorari to bring up a new copy, was applied for, unless the court should conceive that the copy already in court, could be used on this trial, without a certiorari. The answer given by the court was that the copy here could be used, and as such it was intended that the court should notice it, as it was before them. The effect of this record at law, must in the opinion of the undersigned, be important in this controversy. It is presumed that this court and the court below, must have believed one of two things—first, that the appellee’s ancestor had a legal title formerly, which had been lost by time and accident, and therefore, ought to be relieved by a decree for a new conveyance.
Or secondly, that he never had a conveyance, but had proved such a contract for a conveyance, as entitled him to a specific performance in a court of enquiry. On which of these grounds this court has based its decree, does not appear. But it can be collected from the decree of the court below, which is affirmed, that the first of those grounds was ta *184 ken, and that the appellant was decreed to release his estate, because that a funner conveyance had been made by the appellant’s ancestor’s agent, which was lost.
If this be the ground assumed, it is respectfully, but confidently urged, that if cannot be maintained. It will be assumed as an incontrovertible position, that length of time was never held as a bar in equity, but only operated by way of evidence, and that presumptions, that a title had existed, or that conveyances were made, were never indulged in equity and had their origin at law, and the regular practice anterior to our revolution, in courts of equity was, if such presumption was insisted on, to send the case to a court of law. If a jury presumed a conveyance or grant there, it was allowed in chancery.—If, on the contrary, a jury disallowed the presumption, it was held as conclusive in equity, and the chancellor shaped his decree without regard to the lapse of time. The first case in which the chancellor seems to have departed from the practice of sending the matter to law to try the presumption, is a proscribed case of Hillory vs. Waller, 12 Vez. jun. 239. There the chancellor undertook to presume himself, without the aid of a court of law, and decreed the specific performance of a contract made touching an estate, the title of which was objected to as defective, because the legal title was outstanding. But as there were other writings between the parties, shewing that a conveyance was intended, the chancellor presumed it had been made after the lapse of one hundred and forty years. Even this doctrine, after such an extraordinary length of time, has been questioned by Sugden, in his treaties on Vendors, page 251, last American edition. It has, however, received the sanction of the supreme court of the United States, in Prevost vs. Gratz. 6 Wheat. 431, and is quoted by chancellor Kent, 4 John. Chy. Rep. 1.
This modern doctrine, however, that the chancellor may not send to law, by no means impugns the principle that a finding at law is conclusive against the presumption. Sug. on Ven. 210. This *185 court, in the case of McCampbell vs. McCampbell, has also held, that finding between the parties in an ejectment is conclusive where the legal estate lies, in a suit in Chancery, for the same estate. These principles and these authorities unquestionably prove, that the finding at law in this case is conclusive, that the legal title is with the appellant; that neither honor his ancestor ever parted with it. All presumption of such legal estate is destroyed by irrefragible evidence. It will be seen by inspecting the record at law in this case, that the presumption was relied on; that all the evidence introduced into the chancery suit, was used at law, and the jury were instructed that they were at liberty to presume a title; yet the jury found against the supposed title, and this ought to set the question forever at rest. Notwithstanding this, the chancellor, over the head of this verdict and judgment at law, has presumed a title and decreed a release, and this court has affirmed the decision.
But if in this, the undersigned should be mistaken, it is seriously urged that, on no principle, could the presumption be indulged, under the circumstances in this case. What are these circumstances? In the year 1789, possession was taken of this lot. Barbour, the ancestor, was then in the older settlements of Virgnia separated from the estate by a wilderness infested by savages, then in a constant state of hostility, in the year 1792 he was in Louisville a few days. At that time the history of the country proves, that the settlers nearly had all things common, and the boundary line which now rigidly separates meum et tuum, was dimly drawn and but little attended to. There was nothing strange if he let the intruder remain on the property of but little value. He returned to Virginia, and died at or about the close of Indian hostilities, in 1794, leaving an infant son, the appellant, ignorant of his rights and incapable of attending to them. He remained an infant till the fall 1807, and in less than four years afterward, he commenced his ejectment, which has terminated in a judgment, which is perpetually enjoined. The *186 principle of presumption, however strong, cannot go farther than the statute of limitations would go in baring the right. Here no statute had run.—For it ceased, according to repeated decisions, to have any effect upon the right, on the descent cast upon the infant. It must be absurd to say. that the statute had not barred the appellant’s right; that his title at law was clear, and yet that the same length of time should authorize a presumption, which would take his right away by a decree in equity. The strongest cases of presumption in equity do not go thus far. Lapse of time is frequently relied on to bar rights, and it is very seldom admitted to be sufficient to take away clean legal rights. Cases of this kind are rare. Such, as have come under the notice of the undersigned, he will refer to; and it will be seen by inspection, that they fall far short of supporting the decree, in this case. In Ham vs Schuyler, 4 John. Chy. Rep 1 a lease in fee was presumed and decreed to be renewed, of a tract of land situated among other lands thus confessedly leased, after a lapse of 80 years, and payment of rent for that period.
In the case of Livingston vs Livingston, 4 J kn. Chy. Rep. 287. twenty years was held an insufficient time to permit a presumption, although in the preceding case, forty four years were held sufficient. See Stewart vs Bridge, 2 Vern. 516, 5 Vez. 565, 3 Vez 10. Many other cases might he cited; but it is deemed unnecessary, as it is confidently believed that no case can be found, which will justify the presumption of title in this case, even if the verdict at law did not exist. The result then is, that all the whole testimony in the case is disposed of, except the deposition of a solitary witness, Baker — And unless his testimony shall he sufficient to take away the estate, the decree ought to have been reversed. For if the lapse of time is insufficient to presume a conveyance, or the finding at law negatives the presumption, there is not one particle of proof, except the deposit ion of Baker, which shew, any claim to the lots. The enquiry then is, does Le prove, a sale and payment, and ought the suppos *187 ed verbal agreement proved by him, to be specifically enforced, after so great a lapse of time?
What does be prove? A sale—a payment? No. He states the parties talked about it, and Barbour agreed, if Rager would pay ten pounds’to a certain individual, which Barbour owed, Hager should have the lot. They started to see the individual and returned and Rager stated to his wife, in the supposed having of Barbour, that he had bought the lot. From this silence of Harbor, presumptions are to be built, which are to take the lot from the heir. It is to be presumed, that if Barbour had not sold, he would have contradicted this statement; and the further presumption is to be added, that the payment was actually made. Thus one presumption must, be built on another, and the whole founded on the recollection of an illiterate witness, deposing not positively to a casual conversation, which he had no motive to remember, and which tool place nearly forty years ago!!
All this is necessary, before the estate can be taken from Barbour’s representative. But suppose that the testimony is clear enough to warrant all the presumptions, it is earnestly contended, that ike testimony of a single witness is wholly insufficient to warrant a specific performance; and on such testimony, the chancellor will never base his decree. The undersigned will venture to give the challenge to his adversary, to produce a single case where surh decree was rendered, A contract to be specifically enforced, must be dear in proof—and not doubtful In its own details. This principle, is laid down by Powell, and in every author which treats of the subject. Here the presumption, is, that-Rager never paid. Had he had the price, he would have paid it to Barbour at once. As he had it not, he went to snake arrangements with Barbour’s creditor. What was that arrangement? Did he procure a release, for Barbour? When did he pay, this unknown and unnamed creditor? All this part of the contract is uncertain; and if it was certain, the testimony of a single individual is insufficient.
*188 Again. Equity would not decree a specific performance, where a court of law would not give redress in damages, and the chancellor anciently used the practice of sending the parties to a court of law, to ascertain first, whether damages could be recovered, 1 Fonb. 27, note. In what attitude would tho complainant have appeared in this instance in a court of law, attempting to recover damages, by an action of assumpsit, for a breach of this supposed promise after so great a length of time, and on such proof? His success must be very precarious, and certainly the chancellor in so much doubt, ought to hesitate.
But if lapse of time is to have any operation in this controversy, it is insisted that its operation is against the complainant or appellee, and not for him. The appellant has a clear legal estate established at law, and to be relieved against, this, the appellee comes into court with a verbal agreement, defective in detail—depending on the frail recollection of one witness for near forty years, and asks an extinguishment of the legal estate, and protection against the solemn adjudication of a court of law. We have already seen, that in state demands, the chancellor will take the statute as a guide in its discretion, and this, though it is not pleaded, 1 Atk. 493. This court, in the case of Allen vs Beall’s heirs. 3 Marsh. 654, decided that a contract barred at law by a simple limitation of five years, could not be specifically decreed. This language, is employed in that decision:
“If the statute would have operated as a bar to an action at law founded upon the contract, it would seem to follow, that it must equally operate as a bar to a suit in equity, founded on the same contract; for a court of equity is as much bound by the statute, as a court of law. In fact, in all cases, the same rules of propriety, and the same rules of decision govern both courts; and it is, therefore, a settled rule, that equity will not decree the specific execution of a contract, upon which a court of law will not give damages.” Here, however, a verbal contract, indefinite and uncertain in its parts, has been. *189 decreed, after a lapse of near forty years, the statute of limitations notwithstanding. To recapitulate; the undersigned will insist, that there is no ground to presume a former title—that if there was, the verdict and judgment has concluded the question—that there is then, no testimony, except the oath of a single witness, and that shewing only an attempt to negotiate. That on the proof of one witness, without any subsequent recognition of the contact. the chancellor will never enforce it—that the supposed contract was unavailing at law, and could not be enforced after five years, and much less after so great a lapse of time. He would further remark, that he has made one or two references to post-revolutionary cases, which are not offered in violation of rule, as authority; but barely to show how the doctrines of equity have progressed and crept into the elementary writers, the Supreme Court of the United States and the New York Chancery.
Barry, for the Appellant.
Statement.
Purchase by Ragor, Whitlook’s ancestor; from Barbour’s ancestor; possession under the purchase, and recovery in ejectment by Barbour.
*189 The court granted the petition, and the cause was re-argued; but the court adhered to the first opinion; and to that effect—